UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

WISCONSIN ALUMNI RESEARCH
FOUNDATION
614 Walnut Street
Madison, Wisconsin 53705,

      Plaintiff,

v.

ARKION LIFE SCIENCES, LLP
551 Mews Drive
New Castle, Delaware 19720

      Defendant.

Case No. 08-cv-365
Jury Trial Demanded

---

## COMPLAINT

For its complaint, Plaintiff, Wisconsin Alumni Research Foundation ("WARF"), by its attorneys, Quarles & Brady, LLP, alleges as follows:

### PARTIES

1.     WARF is a non-stock, non-profit Wisconsin corporation having a principal place of business at 614 Walnut Street, Madison, Wisconsin 53705.

2.     Defendant, Arkion Life Sciences, LLP ("Arkion"), is a Delaware limited liability company having a principal place of business at 551 Mews Drive, New Castle, Delaware 19720.

3.     Upon information and belief, none of Arkion's members are citizens of the State of Wisconsin.

## JURISDICTION AND VENUE

4. This Court has diversity jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Arkion because Arkion has been and is engaged in substantial and not isolated activities within the State of Wisconsin.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to WARF's claims occurred in this District.

## FACTUAL ALLEGATIONS

7. In August of 1994, WARF and DCV, Inc. ("DCV") entered into License Agreement No. 94-0078 ("the Agreement") under which WARF granted an exclusive license to DCV to certain "Licensed Patent Rights" and "Ancillary Patent Rights" owned by WARF.

8. Pursuant to Section 3C of the Agreement, DCV agreed:

> to pay to WARF as "earned royalties" a royalty calculated as a percentage (the royalty rate) of the Selling Price of Products the manufacture use or sale of which falls within the claims of any Licensed Patent Right or any Ancillary Patent Right (whether the claim is made by an issued patent or a pending patent application).

9. The Agreement provided that the royalty rate varied from 3% to 5% depending on the type of product and the Licensed Patent Rights or Ancillary Patent Rights involved.

10. Pursuant to Section 3D of the Agreement, DCV further agreed:

> to pay WARF minimum royalties on a territory by territory basis per calendar year or part thereof during which this Agreement is in effect against which any earned royalty paid for the same calendar year shall be credited.

11. The Agreement provided that the minimum annual royalty to be paid by DCV was $25,000 per year for the "North America" territory, $15,000 per year for the "Europe" territory and $15,000 per year for the "Asia" territory.

12. Section 6D of the Agreement provided that:

> if DCV at any time defaults in the timely payment of any monies due to WARF or the timely submission to WARF of any Development Report, fails to actively pursue the development plan, or commits any breach of any other covenant herein contained, and DCV fails to remedy any such breach or default within ninety days after written notice thereof by WARF, WARF may, at its option, terminate this Agreement by giving notice of termination to DCV.

13. In 2001 DCV sold substantially all of its assets, including all of intellectual property, to Arkion.

14. On July 31, 2001, DCV wrote to WARF, requesting that DCV be allowed to transfer and assign to Arkion "all of DCV's rights and obligations under the Agreement."

15. WARF consented to the transfer requested by DCV on August 13, 2001.

16. Arkion acknowledged the transfer of "all of DCV's rights and obligations under the Agreement" to Arkion on August 27, 2001.

17. Arkion paid $55,000.00 in minimum royalties owed to WARF under the Agreement for the territories of North America, Europe and Asia for calendar-year 2001.

18. Arkion paid $55,000.00 in minimum royalties owed to WARF under the Agreement for the territories of North America, Europe and Asia for calendar-year 2002.

19. Arkion did not pay any earned royalties or minimum royalties to WARF for the territories of North America, Europe or Asia for calendar-year 2003.

20. Arkion did not pay any earned royalties or minimum royalties to WARF for the territories of North America, Europe or Asia for calendar-year 2004.

21. Arkion did not pay any earned royalties or minimum royalties to WARF for the territories of North America, Europe or Asia for calendar-year 2005.

22. WARF provided written notice of default to Arkion on May 2, 2005.

23. Arkion did not remedy its failure to pay WARF the amounts owed within ninety (90) days as contemplated by Section 6D of the Agreement.

24. WARF provided written notice of termination to Arkion on August 15, 2005, notifying Arkion that the Agreement was terminated as of August 5, 2005, notifying Arkion that Arkion no longer had any right to use the technology that was the subject of the Agreement and demanding that Arkion pay the amounts owed to WARF pursuant to the Agreement.

25. Since termination of the Agreement by WARF on August 5, 2005, Arkion has had no right to use the "License Patent Rights" and the "Ancillary Patent Rights" owned by WARF.

26. Pursuant to Sections 3C and 3D of the Agreement, Arkion owes WARF at least $142,083.00 in minimum royalty payments. This amount is comprised of the $55,000 minimum royalty payment owed for calendar-year 2003, the $55,000 minimum royalty payment owed for calendar-year 2004, and the $32,083 minimum royalty payment owed for calendar-year 2005. The amount owed for calendar-year 2005 is prorated to account for the August 5, 2005 termination of the Agreement by WARF.

27. Despite repeated demands by WARF that Arkion pay the amounts owned under the Agreement, Arkion has, to date, failed to pay WARF any amounts owed for calendar-years 2003, 2004 or 2005.

## CLAIM FOR BREACH OF CONTRACT

28. WARF repeats and re-alleges each and every allegation of paragraphs 1-27 as if fully set forth herein.

29. Arkion breached the Agreement by, *inter alia* failing to pay the amounts owed to WARF for calendar-years 2003, 2004 and 2005.

30. WARF has fully complied with the terms of the Agreement.

31. WARF has demanded that Arkion comply with its obligations under the Agreement, and Arkion has refused to do so.

32. Arkion's breach of the Agreement has damaged WARF in an amount, not less than $142,083.00, to be determined at trial.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff Wisconsin Alumni Research Foundation requests the following relief:

A. All damages resulting from Arkion's breach of the Agreement;

B. Its costs and reasonable attorneys' fees incurred in connection with this action;

C. Prejudgment interest on the amounts owed by Arkion; and

D. Such other and further relief as is just and proper.

PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 38(b), PLAINTIFF DEMANDS A JURY TRIAL OF ALL ISSUES PROPERLY TRIABLE TO A JURY IN THIS CASE.

Dated this 24th day of June, 2008.

Anthony A. Tomaselli
State Bar No. 1003673
Andrew M. Norman
State Bar No. 1055470

*[signature: Anthony A. Tomaselli]*

QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI 53703
608.251.5000

Attorneys for Plaintiff,
*Wisconsin Alumni Research Foundation*